**Ovid H. YOUNGBLOOD et al., Appellants,**

**v.**

**A. O. BULLOCK et ux., Appellees.**

**No. 4378.**

Court of Civil Appeals of Texas.

Waco.

Nov. 4, 1965.

Rehearing Denied Nov. 24, 1965.

Strasburger, Price, Kelton, Miller & Martin, Eugene Jericho, Dallas, for appellants.

Bryan, Wilson, Olson & Stem, Waco, for appellees.

TIREY, Justice.

The Bullocks brought this action against Ovid H. Youngblood, individually, and Youngblood's, Inc., and alleged that the operation by the defendants of a by-products plant owned and operated by defendants constituted a nuisance. The verdict was favorable to plaintiffs and the court overruled the defendants' motion for judg-

ment notwithstanding the verdict and granted plaintiffs' motion for judgment. We affirm the judgment of the lower court.

Plaintiffs' points 1 and 2 are substantially to the effect that the Court erred: (1) In refusing to grant defendants a new trial because of the inflammatory and prejudicial remarks made by plaintiffs' attorney in the presence of the jury; (2) In refusing to grant defendants a new trial because of the inflammatory and prejudicial remarks made by plaintiffs' attorney in his closing argument to the jury.

■ While the plaintiff, A. O. Bullock, was on the witness stand and was being cross-examined by defendants' counsel, Mr. Olson made the following objection:

"If it please the court, we are again going to renew our objection on the grounds that we postponed this case over a year in an attempt—and Mr. Sheehy knows this—in an attempt to correct this situation over a year. This case was filed, as the evidence shows, back in early 1963 and we have postponed this case for over a year in an attempt to correct it and it's worse now than it's ever been."

Defendants' counsel objected to the above statement, and approached the bench and presented its motion for mistrial on the ground that the foregoing statement was inflammatory and prejudicial and having been made in the presence of the jury. The court overruled defendants' motion for mistrial and instructed the jury as follows:

"Motion for Mistrial overruled. (Jury returned) Ladies and gentlemen, just before our going into Chambers, Mr. Olson had made an objection that the Court is now instructing you, as ladies and gentlemen of the jury, will disregard this objection and the statement contained in this objection. All right, let's proceed."

We think the court's instruction cured the error, if any.

Perhaps we should say that defendants had tendered expert and lay witnesses to prove up one of their prime defenses, which was that great time and expense had been expended by defendants to cure odors that came from defendants' plant, and at the time of the trial, new equipment was being installed. One witness testified to the effect that defendants' plant was modern; that it was being operated in a sanitary manner, and devices were already in operation to eliminate odors, and at the time of trial more equipment to further eliminate odors was being installed. Dr. Atkins, City Health Officer, testified to the effect that he had inspected the place several times, and he found nothing in the operation of the plant that would endanger the public health of the community, and that all health and sanitary regulations were being complied with as to the operation of the plant.

Point 2 is grounded on the closing argument made by Mr. Olson, one of the attorneys for plaintiffs, in which he made the following argument to the jury:

"Now, ladies and gentlemen of the jury, there is another matter that I want to go into with you and that's this matter of the offer of $40,000. Mr. Jericho spent so much time on that Mildred said was made. You know an offer is an unusual thing. I don't know whether it was made to her or not; she says that it was, so I assume she recalled that situation correctly. I wonder if it's a fair statement to make that if somebody casually comes down and says, 'I'll give you $40,000' shortly before a lawsuit is coming up for trial. I wonder if it's a fair statement to make, who an offer like that was made by, if he could prevent a lawsuit like this; if such an offer was made. Or was it made for the purpose of asking her the question, 'Was that offer made to you?' Those are things I think this jury can take into consideration."

Immediately after the argument was made defendants' counsel, in open court, ap-

proached the bench and objected to such argument, asked for an instruction and moved for a mistrial, based upon the inflammatory remarks by plaintiffs' attorney, all of which was overruled by the court. Only the quoted part of the argument is shown in the bill of exception.

In connection with point 2, we think we should state that the following testimony was tendered as to the value of the property before and after the building of the processing plant. Plaintiff, A. O. Bullock, testified that the property before was worth $40,000, and after $20,000. George Donaldson placed the value before $44,500, and after $25,125. Mrs. Bullock placed the value of the property before $45,000, and after the building of the plant, at $20,000. J. D. Moore, an experienced real estate salesman, placed the value before at $32,250, and after $32,250; Ben Brown, an experienced real estate agent, placed the value before at $32,000 and after $32,000. The jury found the value before $42,500, and after, $39,750.

In connection with point 2, we think perhaps we should state that Mrs. Bullock testified on cross-examination to the effect that she turned down an offer of $40,000 during the summer before the trial; that the offer was made by Leon Thompson who is connected with the Citizens National Bank as its farm man, and that he was seeking the information for another man who wanted to establish a chicken farm near the City of Waco; that she told Mr. Thompson that she had more in the property than that; that she would not sell it for that, and that she felt that the property was worth more than $40,000, and that at the time of the trial she felt it was worth more than $40,000. She testified specifically:

"Q. But you feel like now your acreage with improvements on it is worth more than $40,000? Today or last summer or last month?

"A. Well, I don't know what it would be worth as far as actually—like

a real estate. I know what I have in it and what I would have to pay and what I paid for the other property and what I got and what I got in this one.

"Q. Well, would it be fair to put it this way, that within the last few months you've been offered $40,000, and you wouldn't sell it for that and that you, in your own mind and heart, feel that it's worth more than $40,000 on the market?

"A. I'm sure it's worth more. I'm sure it would be to a real estate guy."

We are of the view that appellants' points 1 and 2 do not constitute reversible error under the doctrine announced by our Supreme Court in Aultman et al., v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, points 2 and 3. In that case we find this statement of the rule:

"Before a judgment is reversed because of argument of counsel two things must appear; the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case."

It is true that Mrs. Bullock testified on direct-examination that her property was worth $45,000 before and only $20,000 after the building of the processing plant, yet, she testified she had had an offer of $40,000 in the summer before the trial, and she thought it was worth more than that at the time of the trial. Her testimony on cross-examination as to what the value of the property was, and about the offer that was made, was not questioned by the plaintiffs nor the defendants, and since the jury found that the value of the property before was $42,500, and after the building was placed thereon to be $39,750, we do not see how the defendants suffered any damage by reason of the argument made by plaintiffs'

attorney; the jury must have been impressed with Mrs. Bullock's testimony on cross-examination because of the fact that they placed the after value at $39,750.00, such sum being only $250 less than the $40,-000 that she said she was offered for the property in the summer. We see no merit whatsoever in appellants' points 1 and 2 and each is overruled.

We have carefully considered the evidence tendered in this cause and think it is sufficient to support each and every finding by the jury. We have also considered each of the other points assigned by appellants and we are of the view each is without merit and each is overruled.

The judgment of the trial court is affirmed.